## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EDDIE KANE STEEL PRODUCTS, INC.,

        Plaintiff,

        v.

ALABAMA PLATE CUTTING CO., INC. &
CASEY NICHOLS,

        Defendants.

Civil Action No. 18-15167 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

      This matter comes before the Court upon Defendants Alabama Plate Cutting Co. ("Alabama Plate") and Casey Nichols's ("Nichols") (collectively, "Defendants") Motion to Dismiss. (ECF No. 20.) Defendants, in the alternative, request the Court transfer this action to the United States District Court for the Northern District of Alabama. (*Id.*) Plaintiff Eddie Kane Steel Products, Inc. ("Plaintiff") opposed (ECF No. 24), and Defendants replied (ECF No. 25). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants Defendants' request to transfer the matter to the United States District Court for the Northern District of Alabama.

## I.    BACKGROUND[1]

      Plaintiff is a steel service center and distributor of carbon and steel plate.[2] (Compl. ¶ 7, ECF No. 1.) Nichols is a former Supervisor and Manager of Plaintiff's Northport, Alabama

---

[1] In deciding a motion to dismiss for lack of personal jurisdiction, "a court is required to accept the plaintiff's allegations as true and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) (citation omitted).

[2] Plaintiff is incorporated in New Jersey with its principal place of business in Spring Lake, New Jersey. (Compl. ¶ 5.) Plaintiff has its flagship processing facility in Masury, Ohio, and additional

facility.[3] (*Id.* at 9, 17; Decl. of Gus Kane ¶ 5, ECF No. 24-2.) Nichols now works as a Vice President for Black Warrior Metals, a company wholly owned by Alabama Plate.[4] (Decl. of Casey Nichols ¶¶ 7-8.)

Nichols was employed by Plaintiff for two periods, "a year in the past" and from January 2, 2015 to August 23, 2018. (Decl. of Gus Kane ¶ 5.) Plaintiff alleges that, in his role as Plant Manager, Nichols communicated with employees and officers in New Jersey almost daily, and that Nichols traveled to New Jersey to visit Plaintiff's offices and facilities to receive training. (*Id.* ¶¶ 6-7.) As part of his employment, Nichols had access to Plaintiff's trade secrets, including its customer list, information, and pricing formulae ("Trade Secrets"). (Compl. ¶ 9.) Plaintiff alleges Nichols entered into a contract with Plaintiff that recognized the Trade Secrets were Plaintiff's property and agreed not to provide the Trade Secrets to any third parties ("Contract"). (*Id.* ¶ 11.)

On or about August 23, 2018, Nichols left employment with Plaintiff and shortly thereafter began work at Black Warrior Metals. (Decl. of Casey Nichols ¶ 11; Decl. of Gus Kane ¶ 5.) Nichols was hired by Alabama Plate as the Vice President of Operations at Black Warrior Metals. (Decl. of Casey Nichols ¶ 7.) Plaintiff alleges Nichols provided Alabama Plate with all or some of Plaintiff's Trade Secrets, and Alabama Plate used the Trade Secrets to solicit Plaintiff's customers and vendors across the country, including those in New Jersey. (Compl. ¶ 13; Decl. of Gus Kane ¶ 16-17.) Plaintiff claims that due to Defendants' alleged malfeasance, Plaintiff has lost customer business in New Jersey to Alabama Plate. (Decl. of Gus Kane ¶ 19; Compl. ¶ 14.)

---

warehouses and facilities in Commerce, California; Ahoskie, North Carolina; Trenton, New Jersey; and Northport, Alabama. (*Id.* ¶ 7.)

[3] Nichols is a resident of, and presumably domiciled in, Alabama. (Decl. of Casey Nichols ¶ 3, ECF No. 20-2.)

[4] Alabama Plate and Black Warrior Metals are Alabama companies and are headquartered in Alabama. (*Id.* ¶ 9.)

Plaintiff states that at least four witnesses are located in New Jersey, as well as unspecified corporate third-party witnesses. (Decl. of Gus Kane ¶¶ 20-22.)

On October 22, 2018, Plaintiff filed the instant suit. (*See generally* Compl.) Plaintiff brings five causes of action against Defendants. (*Id.*) Counts One and Two—breach of contract and breach of implied covenant of good faith and fair dealing, respectively—are asserted against Nichols. (*Id.* ¶¶ 15-27.) Counts Three, Four, and Five—intentional interference with prospective contractual relations, intentional interference with contractual relations, and misappropriation of trade secrets, respectively—are asserted against both Defendants. (*Id.* ¶¶ 28-60.)

On December 14, 2018, Defendants filed a motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(2) and Rule 12(b)(3), or alternatively, to transfer venue to the District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1404(a) or 1406(a). (Mot. to Dismiss, ECF No. 20.) Plaintiff filed a brief in opposition to Defendants' motion on January 8, 2019. (Pl.'s Opp'n Br., ECF No. 24.) Defendants replied on January 15, 2019. (Defs.' Reply Br., ECF No. 25.)

## II.   LEGAL STANDARD

### A.   Personal Jurisdiction

For the purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that [personal] jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation marks and citation omitted). When the district court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). On a Federal Rule of Civil Procedure 12(b)(3) motion, the burden is on the moving party to show improper venue. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982); *see also Ass'n of Am. Physicians &*

*Surgeons, Inc. v. Am. Bd. of Med. Specialties*, No. 13-2609, 2014 WL 1334260, at *4 (D.N.J. Apr. 2, 2014). Similar to a motion based on personal jurisdiction, a court considering a motion pursuant to Federal Rule of Civil Procedure 12(b)(3) must accept the allegations of the complaint as true, unless contradicted by the defendant. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012).

The plaintiff bears the burden of proof in establishing the existence of personal jurisdiction. *Mellon Bank (East) P.S.F.S., Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *Metcalfe*, 566 F.3d at 330. As to jurisdiction, however, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence . . . not mere allegations." *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) (internal quotation marks and citation omitted); *see also Metcalfe*, 566 F.3d at 330.

A federal district court may exercise two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984); *see also O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction over a corporation may be exercised when the corporation is "fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). A corporation is at home where it has its "place of incorporation and principal place of business" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), or where its affiliations with the state are so "continuous and systematic" as to render it essentially at home in the forum state. *Goodyear*, 564 U.S. at 919. Specific jurisdiction allows a Court to exercise jurisdiction over a non-resident defendant when: (1) the defendant purposefully avails itself of the privilege of conducting its activities within the forum; (2) the litigation arises out of or relates to at least one of those activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *O'Connor*, 496 F.3d at 317 (citation omitted).

## B.    Venue

Motions to dismiss based on improper venue are governed by Federal Rule of Civil Procedure 12(b)(3). The burden is on the moving party to show improper venue. *Myers*, 695 F.2d at 724; *Ass'n of Am. Physicians & Surgeons, Inc.*, 2014 WL 1334260, at *4. Similar to a motion based on personal jurisdiction, a court must accept the complaint's allegations as true, unless contradicted by the defendant. *Bockman*, 459 F. App'x at 158 n.1. In cases with multiple claims, venue must be proper as to each claim. *Fortay v. Univ. of Miami*, No. 93-3443, 1994 WL 62319, at *12 n.19 (D.N.J. Feb. 17, 1994); *see also Fesniack v. Equifax Mortg. Servs. LLC*, No. 14-3728, 2015 WL 2412119, at *9 (D.N.J. May 21, 2015).

A case may be brought in a venue where a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated. 28 U.S.C. § 1391(b)(2) ("Section 1391"). The test for determining proper venue under Section 1391 is not the defendant's contacts with the district, but the locations of those events or omissions giving rise to the claim. *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). Moreover, "events or omissions that might only have some tangential connection with the dispute in litigation are not enough." *DaimlerChrysler Corp. v. Askinazi*, No. 99-5581, 2000 WL 822449, at *6 (E.D. Pa. June 26, 2000) (citations and internal quotation marks omitted). The events must have been substantial under Section 1391 for venue to be proper. *Pa. Gear Corp. v. Fulton*, No. 98-1538, 1999 WL 80260, at *2 (E.D. Pa. Jan. 26, 1999). In order to determine if the act which gave rise to the claim is substantial, "it is necessary to look at the nature of the dispute." *Cottman Transmission Sys.*, 36 F.3d at 295.

## C.    Transfer

A federal district court may transfer a civil action to a different venue under 28 U.S.C. § 1404(a) ("Section 1404") or 28 U.S.C. § 1406(a) ("Section 1406"). Section 1404 states "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." § 1404(a). The Third Circuit has explained "Section 1404[] provides for the transfer of a case where both the original and requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995); *see also Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*, No. 17-12445, 2018 WL 7108018, at *3 (D.N.J. Dec. 6, 2018). When deciding a motion to transfer venue, a district court should be mindful that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879.

Section 1406 provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." § 1406(a). The Third Circuit has explained that "Section 1404[] provides for the transfer of a case where both the original and the requested venue are proper. Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." *Jumara*, 55 F.3d at 878.

## III. THE PARTIES' POSITIONS

Defendants advance three arguments: (1) the Court does not have personal jurisdiction; (2) venue in the Court is improper; and (3) even if the Court did have personal jurisdiction and venue was proper, the case should be transferred to the District Court for the Northern District of Alabama. (Defs.' Moving Br. 2, 10, 19, 20, ECF No. 20-1.) Defendants argue personal jurisdiction is improper because they have no contacts with New Jersey which would support general or specific jurisdiction. (*Id.* at 14-15.) Further, Defendants aver venue is improper because Defendants are not residents of New Jersey and none of the events which gave rise to the claim occurred in New Jersey. (*Id.* at 4-6.) Finally, Defendants claim transfer should be granted because both private and public factors favor transfer. (*Id.* at 21-24.)

Plaintiff opposes, arguing the Court has both general and specific personal jurisdiction because Defendants have systematic and continuous contacts with New Jersey sufficient to satisfy general personal jurisdiction. (Pl.'s Opp'n Br. 14-16.) Moreover, Plaintiff contends Defendants satisfy the *Calder* test for the exercise of specific personal jurisdiction over an intentional tort claim. (*Id.*) Further, Plaintiff argues the exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice because it would not be burdensome for Defendants to litigate in New Jersey, New Jersey has an interest in adjudicating the dispute, and no other state has a greater interest in adjudicating the claim. (*Id.* at 17-18.) Plaintiff also claims venue is proper because: (1) the Trade Secrets were located in New Jersey; (2) Nichols had extensive contacts with New Jersey; (3) venue is "nearly always appropriate" when an employer protects its interest against an out-of-state employee; and (4) it is not dispositive that Defendants live in Alabama. (*Id.* at 19-21.) Finally, Plaintiff maintains that the Court should not transfer the case because Defendants have not met their burden of showing that public and private factors favor transfer. (*Id.* at 24-25.)

In reply, Defendants argue Plaintiff fails to offer admissible evidence. (Defs.' Reply Br. 1.) Defendants point to several paragraphs in Gus Kane's Declaration that they contend will not be admissible. (*Id.*) They also reiterate their arguments that the exercise of personal jurisdiction would be inappropriate, the Court is not the correct venue, and the instant matter should be transferred to the United States District Court for the Northern District of Alabama. (*Id.* at 8, 11.)

## IV.     DISCUSSION

The Court will transfer this matter to the United States District Court for the Northern District of Alabama. The Court has personal jurisdiction over both Defendants arising out of their alleged misappropriation of the Trade Secrets, which were located in New Jersey. Venue, however, is proper in New Jersey only for the claim of misappropriation of trade secrets. In the

interest of justice and for the convenience of the parties, the Court will transfer the instant matter to the District Court for the Northern District of Alabama pursuant to Sections 1404 and 1406.

## A.     Personal Jurisdiction

Under the traditional personal jurisdiction analysis, a court must consider whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).  The Court may consider several factors to ensure maintenance of a civil action does not offend notions of fair play and substantial justice. *Id.* at 477.  These factors include: (1) "the burden on the defendant"; (2) "the forum State's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies". *World-Wide Volkswagen, Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (citations omitted).  A defendant who purposefully directed his or her activities at forum residents must present a compelling case that these factors would render jurisdiction unreasonable. *Burger King*, 471 U.S. at 477.

## 1.     The Court Does Not Have General Jurisdiction Over Defendants

Defendants argue the Court does not have general personal jurisdiction because the main bases for the exercise of general personal jurisdiction over an individual are: (1) the person's domicile; or (2) when he or she is served in the forum state.  (Defs.' Moving Br. 12 (citing *Goodyear*, 564 U.S. at 924).)  Further, Defendants aver the main bases for the exercise of general personal jurisdiction over a corporate defendant are: (1) its place of incorporation; (2) its principal place of business; or (3) where a corporation's operations in a state are so substantial it renders the corporation essentially at home in that state. (*Id.* at 13 (citing *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 173 (D.N.J. 2016)).)  Defendants contend Nichols is not domiciled in New Jersey and Alabama Plate is neither incorporated nor headquartered in New Jersey. (*Id.*)  They maintain

neither Nichols nor Alabama Plate has such substantial contacts with New Jersey so as to render them essentially at home in New Jersey. (*Id.*)

Plaintiff claims the Court has general personal jurisdiction over Defendants based on their "economic entry" into New Jersey. (Pl.'s Opp'n Br. 13.) To support this argument, Plaintiff cites *Eason v. Linden Avionics, Inc.* as precedent. (*Id.* (citing *Eason v. Linden Avionics, Inc.*, 706 F. Supp. 311 (D.N.J. 1989).) In *Eason*, the plaintiff brought a wrongful death action in the District of New Jersey against an airplane manufacturer incorporated in Delaware and headquartered in Kansas. *Id.* The court ruled it had general personal jurisdiction over the defendant because the defendant had a significant economic presence in New Jersey. *Id.* at 324. The defendant in that case had taken substantial steps to do business in New Jersey. *Id.* The manufacturer had sold products there for eight years, had sold over thirty airplanes, and had sent employees to conduct business there over 100 times. *Id.* at 323. Plaintiff, here, argues the exercise of general personal jurisdiction based on economic entry is appropriate because Defendants have allegedly solicited business and acquired customers in New Jersey. (Pl.'s Opp'n Br. 14.)

The exercise of general personal jurisdiction over both Defendants is not appropriate. Defendants' contacts with New Jersey are so "systematic and continuous" as to render them essentially at home in the forum state. *See Goodyear*, 564 U.S. at 919. Plaintiff's argument regarding *Eason* ignores the extent of that defendant's economic entry into the forum state. *Eason*, 706 F. Supp. at 323. Here, Plaintiff's allegations regarding Defendants' contacts with New Jersey do not render Defendants essentially "at home" in New Jersey. Unlike the facts in *Eason*, Plaintiff has not alleged Defendants sold products in the state for years and sent dozens of employees into the state. Without more facts establishing Defendants' contact with New Jersey, the Court cannot exercise general personal jurisdiction over Defendants.

## 2.  The Court Has Specific Jurisdiction Over Defendants

In cases of intentional torts, the court may exercise personal jurisdiction when the *Calder* test is satisfied. *Calder v. Jones*, 465 U.S 783 (1984); *see also Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Defendants who satisfy the *Calder* test do not have to satisfy the elements of the traditional test of personal jurisdiction. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998) (reasoning that a party that satisfied the *Calder* test may avail itself of a court's personal jurisdiction even if the party would not satisfy the traditional test); *see also Marten*, 499 F.3d at 297; *Vizant Tech., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 632 (E.D. Pa. 2015); *Gov't Emps. Ins. v. Nealey*, 262 F. Supp. 3d 153, 163-64 (E.D. Pa. 2017). Under this test, a plaintiff may demonstrate specific personal jurisdiction if he or she shows: (1) the defendant committed an intentional tort; (2) "the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort"; and (3) the defendant expressly aimed his or her tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *IMO Indus., Inc.*, 155 F.3d at 265-66; *see also Marten*, 499 F.3d at 297.

Trade secrets are possessed where the owner of the trade secret is a resident. *See Paolino v. Channel Home Ctrs.*, 668 F.2d 721 n.2 (3d Cir. 1981) (noting that intellectual property cannot have a physical situs except the state of residence of the person who owns it); *see also Vital State Canada, Ltd. v. DreamPak, LLC*, 303 F. Supp. 2d 516, 520 (D.N.J. 2003) (quoting *Horne v. Adoplh Coors Co.*, 684 F.2d 255, 259 (3d Cir. 1982)) ("insofar as the situs of the property damaged by the alleged wrongdoing is a concern, both a state trade secret and a patent should be deemed to have their fictional situs at the residence of the owner"). Accordingly, courts find the "brunt of the harm", under the second pong of *Calder*, occurs in the state where the trade secret owner is incorporated or headquartered. *Cabot Corp. v. Niotan, Inc.*, No. 08-1691, 2011 WL 4625269, at *14 (E.D. Pa. Sept. 30, 2011); *see also Gov't Emps. Ins.*, 262 F. Supp. 3d at 166.

To meet the *Calder* test's third prong, it is not sufficient that a plaintiff merely "establish that defendant knew that plaintiff was located in a particular forum." *Cabot Corp.*, 2011 WL 4625269, at \*14. The plaintiff must additionally "point to a specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus., Inc.*, 155 F.3d at 266; *see also Strategic Prods. and Servs., LLC v. Integrated Media Techs., Inc.*, No. 18-00694, 2019 WL 2067551, at \*6 (D.N.J May 10, 2019). When a defendant misappropriates trade secrets, the state where the plaintiff is located is where the trade secrets were stolen and is the focal point of where the defendant directs its activities. *Cabot Corp.*, 2011 WL 4625269, at \*15. Therefore, if a defendant steals trade secrets from a plaintiff, the defendant expressly aims his or her tortious activity at the state where the plaintiff resides, and the plaintiff has felt the brunt of the harm in that state.

Here, Defendants argue the Court does not have specific jurisdiction over them because they do no business in New Jersey. (Defs.' Moving Br. 14-15.) Moreover, Defendants assert Plaintiff cannot show Alabama Plate aimed any tortious activity toward New Jersey. (*Id.* at 15.) They also maintain Nichols's contacts with New Jersey were too sporadic for the exercise of specific personal jurisdiction. (*Id.* at 16.) Defendants allege Nichols's job with Plaintiff did not involve contact with New Jersey customers or employees. (*Id.*) Defendants claim the Court cannot exercise specific jurisdiction over Nichols because the facts that Nichols's brother, a former employee of Plaintiff, recommended he work for Plaintiff and Nichols's communications with Plaintiff's New Jersey office are insufficient to establish personal jurisdiction. (*Id.* at 18-19.)

Plaintiff argues specific jurisdiction is appropriate because Defendants satisfy the *Calder* test. (Pl.'s Opp'n Br. 15.) Moreover, Plaintiff asserts Defendants have aggressively pursued business in New Jersey, and Defendants should reasonably anticipate litigation in New Jersey because of their activities in the state. (*Id.* at 16.) Plaintiff claims personal jurisdiction here would satisfy the reasonableness test set forth in *World-Wide Volkswagen* because: (1) it would not be

burdensome for Defendants to litigate in New Jersey as they do business here; (2) New Jersey has an interest in adjudicating the dispute because of Nichols's relationship with New Jersey and because the Trade Secrets were stolen from New Jersey; and (3) Plaintiff's interest in obtaining the most efficient resolution favors New Jersey because Alabama Plate is a "national company". (*Id.* at 17-19.)

Here, there are sufficient minimum contacts with New Jersey to establish personal jurisdiction over Nichols under the *Calder* test. Nichols allegedly misappropriated Plaintiff's Trade Secrets which had their situs in New Jersey. Plaintiff sufficiently alleges Nichols meets the first prong of the *Calder* test because misappropriation of trade secrets is an intentional tort. *See generally Merckle GmbH v. Johnson & Johnson*, 961 F. Supp. 721, 730 (D.N.J. 1997). Further, Plaintiff felt the brunt of the harm in New Jersey because the company is incorporated in New Jersey and the Trade Secrets have their situs there. Thus, the second prong of the *Calder* test is satisfied. Finally, Nichols meets the third prong of the *Calder* test because he knew Plaintiff was located in New Jersey and, additionally, the Trade Secrets were stolen from New Jersey.

Likewise, the exercise of personal jurisdiction over Alabama Plate is appropriate under the *Calder* test. Alabama Plate misappropriated Plaintiff's Trade Secrets, which had their situs in New Jersey. Plaintiff felt the brunt of the harm in New Jersey because the Trade Secrets had their situs there. Finally, because the Trade Secrets were located in New Jersey, Alabama Plate aimed its tortious activity at New Jersey.

### B. Venue Is Proper With Respect to the Trade Secrets Claim Only

Under New Jersey law, tortious interference with contractual relations requires the plaintiff establish: (1) the existence of a contract; (2) the defendant actually interfered with the contract; (3) the defendant was not a party to the contract but was rather a third party; (4) the defendant intentionally and unreasonably interfered with the relationship between the contracting parties; and (5) the defendant's conduct caused the plaintiff damage. *Michael Halebian N.J., Inc. v. Roppe*

*Rubber Corp.*, 718 F. Supp. 348, 360 (D.N.J. 1989); *see also Wexco Indus. v. AMD21 Co., Ltd.*, No. 04-5244, 2008 WL 5427867, at *9 (D.N.J. 2008). In order to establish a claim for tortious interference with a prospective contractual relationship, a plaintiff must prove the following elements: (1) a reasonable expectation of economic advantage or benefit belonged or accrued to the plaintiff; (2) the defendant knew of such an expectancy; (3) the defendant wrongfully and intentionally interfered with this expectancy; (4) it is reasonably probable that without the alleged interference, the plaintiff would have realized its economic advantage; and (5) the defendant's conduct injured the plaintiff. *Printing Mart–Morristown v. Sharp Elec. Corp.*, 563 A.2d 31 (N.J. 1989); *see also Novartis Pharms. Corp. v. Bausch & Lomb, Inc.*, No. 07-5945, 2008 WL 4911868 (D.N.J. Nov. 13, 2008).

In actions based upon a contract dispute, a court can consider multiple factors "in determining whether venue is proper under [Section 1391], including: (1) where the contract was negotiated or executed; (2) where the contract was to be performed; and (3) where the alleged breach occurred. Additionally, where the alleged harm occurred is also relevant for purposes of venue." *Prudential Ins. Co. v. Figueredo*, No. 06-0693, 2007 WL 2752093, at *3 (D.N.J. Sept. 20, 2007) (citation omitted). Where the harm was suffered may be dispositive for the purposes of venue in a case when it is unclear where the contract was negotiated, executed, to be performed, or breached. *Cmty. Surgical Supply of Toms River, Inc. v. Medline DiaMed, LLC*, No. 11-00221, 2011 WL 3235706, at *5 (D.N.J. July 28, 2011).

### 1. The Parties' Arguments

Defendants maintain the District of New Jersey is not an appropriate venue for this matter. Defendants assert venue is improper under Section 1391(b)(1) or (3) as Defendants are not residents of New Jersey and because venue would be correct in the Northern District of Alabama, where Defendants are located. (Defs.' Moving Br. 3.) Defendants also argue venue is improper

under Section 1391 because none of the events giving rise to any of the causes of action occurred in New Jersey. (*Id.* at 4.)

With regard to the contract claim, Defendants aver any employment contract would have been negotiated, executed, and performed in Alabama. (*Id.* at 5.) Further, they claim any breach could only have occurred in Alabama. (*Id.* at 6.) Defendants assert that, because Nichols worked only in Alabama, any harm arising from the alleged breach could be felt only in Alabama. (*Id.*)

Defendants argue venue is not appropriate with respect to the claims of intentional interference with current or prospective contractual relations. (*Id.* at 7.) Defendants maintain Nichols worked only in Alabama, and he currently does no business in New Jersey. (*Id.* at 8.) Further, Defendants believe the "third parties" Plaintiff mentions are in fact a single company, Nucor Steel Tuscaloosa, which is a steel company located in Alabama. (*Id.*)

With respect to Plaintiff's misappropriation of trade secrets claim, Defendants argue venue in New Jersey is inappropriate because Nichols worked only in Alabama and Defendants do not do business in New Jersey. (*Id.* at 9.) In further support of their venue argument, Defendants aver that Alabama is the only place where Nichols had access to the Trade Secrets. (*Id.*)

Plaintiff contends venue in New Jersey is correct with respect to the misappropriation of trade secrets claim because trade secrets are located in their owner's home state. (Pl.'s Opp'n Br. 19.) Plaintiff asserts, therefore, that a substantial part of the property subject to this action is situated in New Jersey, and venue is appropriate for this claim under 28 U.S.C. § 1332(b)(2) ("Section 1332"). (*Id.* at 20.) Plaintiff also avers venue is "nearly always appropriate" when employers protect their interests against a former employee. (*Id.*) Plaintiff argues Nichols had substantial relations with New Jersey, including sending his employment agreement papers to, getting training from, and receiving IT support from individuals located in the state. (*Id.* at 20-21.) Finally, Plaintiff maintains Defendants' residence is not dispositive, and Defendants have the burden of proving venue is not appropriate. (*Id.* at 21-22.)

### 2. Contract-Based Claims

Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing do not have proper venue in New Jersey. Plaintiff alleges no information regarding where the agreement between Plaintiff and Nichols was negotiated, signed, or to be performed. Plaintiff's complaint merely asserts it had the Contract with Nichols, and Plaintiff's response to the Motion to Dismiss alleges no facts about the Contract. (Compl. ¶¶ 11-13; Decl. of Gus Kane.) Defendants' affidavits, on the other hand, provide that Nichols "did not recall negotiating or signing any contracts" related to his employment with Plaintiff. (Decl. of Casey Nichols ¶¶ 24-27.) A court must accept the allegations of the complaint as true unless contradicted by the defendant. *Bockman*, 459 F. App'x at 158 n.1. Plaintiff, however, has not presented sufficient facts to show the Contract was negotiated, signed, or broken in New Jersey, or that it was to be performed there. As such, venue is not appropriate with regard to Plaintiff's contract-based claims. *See Howmedica Osteonics Corp. v. DJO Glob., Inc.*, No 16-2330, 2017 WL 1136671, at *4-5 (D.N.J. Mar. 27, 2017) (finding New Jersey was an inappropriate venue for a contract claim when the contract was not signed or performed in New Jersey).

### 3. Intentional Interference Claims

Plaintiff alleges Defendants interfered with Plaintiff's contractual relations with third parties that had a probability of yielding future economic benefits. (Compl. ¶¶ 29-39.) It also asserts Defendants prevented those third parties from doing business with Plaintiff by misappropriating the Trade Secrets and using them to reach into, and take business from Plaintiff in, New Jersey. (*Id.* ¶¶ 40-50.)

Because the test for venue under Section 1391 is the location of the acts or omissions that gave rise to a complaint, Plaintiff must allege Defendants performed some act in New Jersey which gave rise to the claims for intentional interference with prospective or current contractual relations. As discussed below, Plaintiff fails to meet this burden.

In the Complaint and supporting documents, Plaintiff made no specific allegations Defendants took any action in New Jersey that would give rise to their tortious interference claims. In support of their Motion to Dismiss, Defendants provided affidavits stating that neither Nichols nor Alabama Plate perform any business in New Jersey. (Decl. of Casey Nichols ¶¶ 33-35; Decl. of Jeffery H. Whitlock ¶¶ 9-11.) In response, Plaintiff offered affidavits with non-specific assertions that Defendants do, in fact, have business in New Jersey. (Decl. of Gus Kane ¶¶ 17-18.) Plaintiff, however, fails to identify any contracts or business it has lost in New Jersey, nor did it identify any contracts with which Defendants had interfered. As such, Plaintiff fails to allege a substantial part of the events that gave rise to the claims of intentional interference with prospective or current contractual relations occurred in New Jersey. The Court, therefore, finds venue is improper under Section 1391.

### 4. Misappropriation of Trade Secrets Claims

Plaintiff alleges Defendants used Plaintiff's Trade Secrets to solicit Plaintiff's customers and vendors. Because these Trade Secrets are located in New Jersey, where Plaintiff is located, venue under Section 1391 is proper as a substantial portion of the property subject to the litigation is located in New Jersey. Moreover, venue is appropriate because a substantial portion of the events giving rise to the action occurred in New Jersey as the Trade Secrets were stolen from New Jersey. *Unix v. Berkley Software*, No. 92-1667, 1993 WL 414724, at *11 (D.N.J. Mar. 3, 1993); *see also Paul Green Sch. of Rock Music Franchising, LLC v. Rock Nation, LLC*, No. 08-4503, 2009 WL 129740, at *2 (E.D. Pa. Jan. 13, 2009).

### D. Transfer

When evaluating a motion to transfer, the Court must balance various private and public interests related to the transfer. *Jumara*, 55 F.3d at 879. The private interest factors include:

> [1] plaintiff's forum preference as manifested in the original choice,
> [2] the defendant's preference, [3] whether the claim arose
> elsewhere, [4] the convenience of the parties as indicated by their

relative physical and financial condition, [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum) . . . .

*Id.* (citations omitted). The public interest factors include:

[1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home[;] [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted). It is the movant's burden to prove transfer is necessary. *Id.*

### 1.    The Parties' Arguments

Defendants argue venue is incorrect in this district and is appropriate in the Northern District of Alabama, and therefore the Court should transfer the case there pursuant to Sections 1404 or 1406. (Defs.' Moving Br. 19-20.) Defendants aver the private interests of the case favor transfer to the District Court for the Northern District of Alabama as: (1) their preferred forum is the Northern District of Alabama; (2) the operative facts of the claims occurred in Alabama; (3) Plaintiff is a nationwide company, so having to travel to Alabama would not inconvenience it; (4) the convenience of the parties favors transfer because it would substantially burden Nichols to travel to New Jersey and because Alabama Steel is located only in Alabama; and (5) any witnesses and documents are located in Alabama. (*Id.* at 21-23.) Defendants also argue the practical considerations that make trial easy, expeditious, or inexpensive favor transfer because "the vast majority" of witnesses will be located in Alabama. (*Id.* at 24.) Moreover, Defendants claim Alabama has an interest because a substantial amount of the alleged conduct occurred in Alabama. (*Id.*)

Plaintiff cites the *Burke* factors as the standard courts use to determine transfers under Section 1404.[5] (Pl.'s Opp'n Br. 23 (citing *Burke v. Quarterly*, 969 F. Supp. 921, 929 (D.N.J. 1997)).) Plaintiff maintains private interests favor keeping the case in the District of New Jersey because a "large portion" of the proof related to their trade secrets claim will be in New Jersey. (Pl.'s Opp'n Br. 24.) Further, Plaintiff contends Defendants should not need witnesses from Alabama, and therefore the location of witnesses and the cost of obtaining them are not relevant. (*Id.*) Finally, Plaintiff asserts Defendants have tendered no proof that litigation in New Jersey would not be easy, expeditious, and inexpensive, and Defendants will be able to litigate in New Jersey with minimal travel given modern communication. (*Id.* at 24-25.)

Plaintiff also argues public factors do not favor transfer. (*Id.* at 25.) Plaintiff claims this case is a local dispute because the Trade Secrets and Plaintiff are located in New Jersey. Plaintiff asserts New Jersey law will apply, because it has the "strongest connection" to the dispute and Defendants have not alleged otherwise. (*Id.*) Plaintiff additionally avers it would be fair to impose jury duty on the New Jersey community because Plaintiff is located in New Jersey. (*Id.* at 26.)

As stated above, New Jersey is the proper venue for Plaintiff's trade secrets claims, but New Jersey is an improper venue for the remainder of Plaintiff's claims. Thus, Plaintiff's trade secrets claims are potentially subject to transfer pursuant to Section 1404, while the remainder of Plaintiff's claims are potentially subject to transfer pursuant to Section 1406. The Court, accordingly, addresses transfer pursuant to Sections 1404 and 1406 in turn.

---

[5] *Burke* lists the following private interests to be considered: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) costs of obtaining witnesses; and (4) the practical considerations which make trial easy, expeditious, and inexpensive. 969 F. Supp. at 929. *Burke* lists the following public factors: (1) administrative difficulties flowing from court congestion; (2) the interest in having local disputes resolved at home; (3) the interest in having a case tried in the district that is familiar with applicable law; (4) avoidance of unnecessary problems in conflicts of laws; and (5) the unfairness of imposing jury duty upon a community with no relationship to the litigation. *Id.*

2.    **Section 1404**

a.    **Private Factors**

With respect to the first private interest factor, Plaintiff's forum choice would normally be entitled to significant deference as Plaintiff chose its home forum, New Jersey. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Nevertheless, the Court finds it appropriate to reduce the amount of deference afforded to Plaintiff's forum choice because New Jersey has minimal connections to the operative facts of the lawsuit. *See Smith v. Wyndham Vacation Ownership, Inc.*, No. 16-5170, 2017 WL 548943, at *3 (D.N.J. Feb. 10, 2017) (citing *Garlick v. Quest Diagnostics, Inc.*, No. 06-6244, 2010 WL 1490923, at *2 (D.N.J. Apr. 13, 2010)) ("A plaintiff's choice of forum, while ordinarily entitled to some deference, is entitled to less deference, perhaps to the vanishing point, when the plaintiff chooses a foreign forum with no apparent connection to the operative facts of the lawsuit."). In this case, only Plaintiff's alleged misappropriation of trade secrets claim occurred in New Jersey. By contrast, it is not entirely clear where Plaintiff's intentional interference with prospective or current contractual relations and breach of the implied covenant of good faith and fair dealing claims arose, and Plaintiff fails to sufficiently allege such breaches occurred in New Jersey. Given Defendants' affidavits and Plaintiff's failure to allege specific facts, the evidence before the Court suggests any alleged breach of contract or tort claims occurred in Alabama and not New Jersey.

The second and third factors—Defendants' preference and the location where the claims arose—weigh in favor of transfer. Here, Defendants prefer Alabama because it is where Defendants reside and operate, and it is where the events giving rise to most of the claims occurred.

With respect to the convenience of the parties and witnesses, Plaintiff does not allege it would be inconvenient for it to litigate in Alabama. Nichols, however, asserts it would inconvenience him financially to travel to, and defend himself in, New Jersey. Moreover, both

19

Plaintiff and Defendants have identified witnesses that would be located in New Jersey and Alabama. The Court finds this factor does not weigh decisively in either direction.

The Court finds the sixth factor—the location of books and records—is also neutral. Given the prevalence of electronically stored information and technological advances, documents or records can be easily moved electronically to different venues. *Goldstein*, 2015 WL 9918414, at *4 (citing *Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 810 (D. Del. 2011)) (noting that "technology [may] make[ ] the physical location of documents relatively unimportant"). Overall, the Court finds the private factors weigh in favor of transfer.[6]

### b. Public Factors

The public interest factors weigh in favor of transfer. First, a judgment against Defendants in Alabama will be enforceable in Alabama. As to the second public interest factor, it appears witnesses and evidence are located in both New Jersey and Alabama. The third public interest factor weighs heavily in favor of transfer because the District of New Jersey is currently experiencing a judicial emergency and has six judicial vacancies while the District Court for the Northern District of Alabama, on the other hand, has a full complement of judges. *See* Current Judicial Vacancies, https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited July 18, 2019). Turning to the fourth public interest factor,

---

[6] Although Plaintiff cites to *Burke* as the standard for determining venue transfers, the Third Circuit has continuously affirmed *Jumara* as the standard. (Pl.'s Opp'n Br. 23 (citing *Burke*, 969 F. Supp. at 921)); *see Jumara*, 55 F.3d at 873; *see also, In re Howmedica Osteonics Corp.*, 867 F.3d 390 at 401-02 (3d Cir. 2017). Even if the Court were to use the *Burke* factors, however, the resulting decision would be the same given the overlap between the *Burke* and *Jumara* factors and the non-dispositive nature of the remaining factors. *See Infanti v. Mandalay Bay Resort & Casino*, No. 13-6934, 2014 WL 1430368, at *5 (D.N.J. Apr. 14, 2014) (reasoning courts should consider all relevant factors to determine whether the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.) The only different factor here is the unfairness of imposing jury duty upon a community with no relationship to the litigation. Given that Defendants reside and operate in Alabama and many of the events giving rise to the causes of action likely occurred there, this factor is neutral.

although New Jersey has an interest in protecting trade secrets located in New Jersey, Alabama also has an interest in having a local dispute settled in Alabama, especially since a substantial amount of the alleged conduct that gave rise to this action occurred in Alabama. *See Paul Green Sch. of Rock*, 2009 WL 129740, at *2; *see also Czajkowski v. Peal*, No. 14-3803, 2015 WL 1914605, at *7 (D.N.J. Apr. 24, 2015). Given both states' competing interests, this factor is neutral. Finally, neither court has public policies that favor a particular district, and both courts are capable of applying the relevant state law. Thus, because of the judicial emergency in New Jersey, on balance, the public interest factors weigh in favor of transfer.

### 3. Section 1406

The Third Circuit has noted Section 1406's "transfer provision is designed to preserve claims that rigid application of dismissal rules may bar." *Lafferty v. St. Riel*, 495 F.3d 72, 79 (3d Cir. 2007) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)). Thus, even in the absence of personal jurisdiction over a defendant, a court may transfer a case pursuant to Section 1406. *Goldlawr, Inc.*, 369 U.S. at 466 ("The language of [S]ection 1406[] is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."). If a mistake of venue is made, "Congress, by the enactment of [S]ection 1406[], recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by . . . 'time-consuming and justice-defeating technicalities.'" *Id.* at 467 (quoting *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955)). Therefore, "[t]ransfer is generally more in the interest of justice than dismissal." *Boily v. Walt Disney World Co.*, No. 08-4967, 2009 WL 1228463, at *8 (D.N.J. May 1, 2009) (citing *CAT Aircraf tLeasing, Inc. v. Cessna Aircraft Co.*, 650 F. Supp. 57, 60 (D.V.I. 1986)).

As discussed above, under Section 1391, this case could have originally been brought in the Northern District of Alabama because it is where all Defendants reside. Both the public and private factors weigh in favor of transfer. The Court, accordingly, finds that it is in the interest of justice to transfer this matter to the Northern District of Alabama. Plaintiff's trade secrets claims are subject to transfer pursuant to Section 1404 and the remainder of Plaintiff's claims are subject to transfer to Section 1406.

## V.   CONCLUSION

For the reasons set forth above, the Court finds it has specific personal jurisdiction over Defendants. Plaintiff's claims for breach of contract, breach of implied covenant of good faith and fair dealing, intentional interference with prospective contractual relations, and intentional interference with contractual relations, however, are not brought properly in this venue. The Court, accordingly, finds it is in the interest of justice to transfer this matter to the United States District Court for the Northern District of Alabama. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

**Dated:** July 19th, 2019